# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

ATHENE ANNUITY AND LIFE COMPANY,

          Plaintiff,

          v.

ASSICURAZIONI GENERALI S.P.A.,

          Defendant.

)
)
)
)
)
)
)
)
)
)
)

C.A. No. N25C-10-250 KMM (CCLD)

Date Submitted: February 20, 2026
Date Decided: April 9, 2026

*Defendant's Motion to Dismiss*
GRANTED in Part, DENIED in Part

## <u>**MEMORANDUM OPINION**</u>

James G. Gorman III, Adam V. Orlacchio, BLANK ROME LLP, Wilmington, Delaware; Helen K. Michael (argued), Kyle P. Brinkman, BLANK ROME LLP, Washington, DC, *Attorneys for Plaintiff*.

Joseph S. Naylor, SWARTZ CAMPBELL LLC, Wilmington, Delaware; Anthony Merrill (argued), Ryan P. Hogan, SNELL & WILMER, Phoenix, Arizona, *Attorneys for Defendant*.

**Miller, J.**

# I.     INTRODUCTION

Assicurazioni Generali S.p.A ("Generali") is contractually obligated to defend, or indemnify Athene Annuity and Life Company ("Athene") for, claims arising out of ownership of an office building previously owned by Generali. Generali, in turn, has indemnification rights against the building's previous owner. Athene has defended asbestos claims relating to the building.

After Generali chose not to defend the currently pending claim, Athene assumed the defense. It claims Generali refused to monetarily participate in settlement negotiations and refused to acknowledge its contractual indemnification obligations. Athene filed this action asserting four declaratory judgement claims relating to Generali's indemnification obligations under the contract and a breach of contract claim for failing to reimburse Athene for expenses incurred.

Generali filed a Motion to Dismiss asserting the declaratory judgment claims are not ripe and the contract claim fails to state a claim under Rule 12(b)(6) (the "Motion").[1]

At oral argument on Generali's Motion, Generali acknowledged its contractual obligations with respect to two of the four declaratory judgment claims. So, to the extent there was a dispute regarding Generali's obligation to cover punitive

---

[1] D.I. 3.

damages or that its indemnification obligations are independent of its indemnitor's, the Motion is **GRANTED** on these claims as they are moot.

A dispute is ripe if the material facts are static and it will result in unavoidable litigation sooner or later. The remaining declaratory judgment claims fall within this category. The parties dispute whether the contract requires Athene to make a claim under any applicable insurance policy and have the claim denied (in whole or part) before Generali's indemnification obligations are triggered. No matter the outcome of the pending claim, the dispute over Athene's insurance claim obligation, if any, will need to be resolved. Therefore, the Motion is **DENIED** on these counts.

The contract is clear that Generali must "promptly reimburse[]" Athene for fees and expenses "as and when incurred." There is no dispute that Generali has not reimbursed Athene, but Athene never submitted the fees and expenses to Generali. Athene cannot sustain a breach of contract claim where Generali was not given an opportunity to perform. Accordingly, Athene's breach of contract claim is **DISMISSED** for failure to state a claim.

## II.    BACKGROUND

### A.    *The Purchase Agreement*

In 2002, Athene's predecessor[2] acquired Business Men's Assurance Company of America ("Business Men's Assurance Company")[3] from Generali's predecessor - Generali Finance B.V.[4] through an equity purchase (the "Purchase Agreement"), which included ownership of a building known as Tower Headquarters.[5]  Under the Purchase Agreement, Generali is obligated to indemnify Athene against "Liabilit[ies][6] relating to or arising out of the ownership, operation use or occupancy at any time before, on or after the Closing of the Tower Headquarters (including … asbestos related claims by Employees, independent contractors, tenants, or any other Person)."[7]

> Section 10.2 of the Purchase Agreement provides:
>
> Subject to … Section 10.4 hereof, Seller shall indemnify and hold harmless Buyer, the Company, and their respective successors, permitted assigns, stockholders, controlling Persons, Related Persons and the Representatives of each of them (collectively, the "<u>Buyer Indemnified Persons</u>") from and against, and shall reimburse Buyer and the Buyer Indemnified Persons for, any and all losses, Liabilities,

---

[2] Liberty Life Insurance Company.
[3] Complaint ¶¶ 1-4 (D.I. 1) ("Compl.").  Liberty Life was acquired by Athene Holding Ltd. and Liberty changed its name to Athene Annuity & Life Insurance Company.  In October 2024, Athene Annuity & Life Insurance Company merged with its affiliate Athene Annuity and Life Company.
[4] *Id.* ¶¶ 1, 17.
[5] Tower Headquarters is Business Men's Assurance Company's headquarters building, located in Kansas City, Missouri.  *Id.* ¶ 19.
[6] Capitalized terms not otherwise defined herein have the meaning ascribed to them in the Purchase Agreement.
[7] Compl. ¶ 18; *see also* Purchase Agreement § 10.2 (D.I. 1, Ex. A).

Actions, deficiencies, expenses **(including reasonable costs of investigation and defense and reasonable attorneys' and accountants' fees and expenses)** or damages of any kind or nature whatsoever, whether or not involving a third party claim (collectively, "Damages"), incurred thereby or caused thereto, directly or indirectly, based on, arising out of, resulting from, relating to, or in connection with . . .:

* * *

(d) Any of the following Liabilities (in each case irrespective of whether or not such Liability is a Liability of any of the Purchased Companies or otherwise):

* * *

(v) any Liability (i) relating to or arising out of the ownership, operation, use or occupancy at any time before, on or after the Closing, of the Tower Headquarters (including Liabilities under related contracts or asbestos related claims by Employees, independent contractors, tenants, or any other Person) . . .[8]

Section 10.4 provides that Damages "shall be reduced to the extent of any amounts actually received by [Athene] from any third party, … pursuant to the terms of any insurance or reinsurance contracts covering such Damages."[9]

Under Section 10.6, if Athene provides Generali with notice of the commencement of a Third Party Claim and if Generali does not elect within 20 days to assume the defense of the claim, Generali

> shall be bound by any determination made in such Third Party Claim or any compromise or settlement effected by the [Athene] to which [Generali] has consented, [Athene] shall conduct the defense thereof in good faith, and [Generali] shall be responsible for the reasonable fees and expenses of counsel employed by [Athene], **which shall be**

---

[8] Purchase Agreement § 10.2 (bold added).
[9] *Id.* § 10.4.

**promptly reimbursed for any such fees and expenses, as and when incurred**.[10]

"Liability" means "any debt, liability, commitment or obligation of any kind, character or nature whatsoever, whether known or unknown, choate or inchoate, secured or unsecured, accrued, fixed, absolute, contingent or otherwise, and whether due or to become due."[11]  The Purchase Agreement does not address punitive damages.

**B.    *The Indemnity Dispute***

Since the 2002 purchase, Athene has litigated six asbestos claims relating to Tower Headquarters, the most recent of which is the *Barnes*[12] claim, which seeks among other recoveries, punitive damages.[13]  After a jury returned a verdict in favor of Athene in October 2024,[14] Ms. Barnes' appeal remains pending.[15]

After Athene notified Generali of the *Barnes* claim, it elected not to assume the defense.[16]  Thereafter, Generali reserved its rights and refused to participate monetarily in efforts to settle the *Barnes* claim,[17] citing as justification, (i) Athene's alleged requirement to first pursue coverage from its insurance carrier and/or

---

[10] *Id.* § 10.6(b)(v) (emphasis added).
[11] *Id.* § 3.18.
[12] *Roslyn T. Barnes v. Athene Annuity & Life Assurance Company, et al.*, Case No. 2016-CV04648.
[13] Compl. ¶¶ 28-35.  Ms. Barnes, additionally, brought a claim in the Missouri Division of Workers' Compensation, however, that claim has not been litigated.  *Id.* ¶¶ 28-29
[14] *Id.*
[15] *Id.* ¶ 29.
[16] *Id.* ¶¶ 31-32.
[17] *Id.* ¶ 33.

contribution from co-defendants, and (ii) Generali did not have consent from its own indemnitor, Quest Diagnostics Incorporated and its subsidiary LabOne, LLC ("Quest"), to cover some or all of the costs.[18]

Athene received some defense costs from insurers on the *Barnes* claim. But legal costs exceeding $850,000 remain outstanding.[19] Generali again reserved its rights, refused to acknowledge its indemnity obligations, and has made no payments relating to these expenses.[20]

## C. *Athene's Claims*

The complaint asserts five counts. The first four counts seek a declaratory judgment relating to Generali's indemnification obligations: Count I (Generali's indemnification obligations are independent of any insurance coverage), Count II (Generali's obligations are not dependent on Quest's actions), Count III (Generali's indemnification obligation includes punitive damages), and Count IV (Generali's obligation to pay *Barnes* attorneys' fees and expenses on an on-going basis). Count V asserts a breach of contract for failing to pay the $850,000 currently outstanding on the *Barnes* claim.

---

[18] *Id.*
[19] *Id.* ¶ 34.
[20] *Id.*

### III.     PARTIES CONTENTIONS

Generali contends that Athene's declaratory judgment claims are not ripe because there are too many future uncertainties and therefore, they must be dismissed.[21]  Generali acknowledges that it may eventually have indemnification obligations, but it is not required to "backstop" Athene's settlement negotiations by "pre-funding" its potential future obligations.  It argues that its obligations, if any, cannot be determined unless and until a final judgment is entered against Athene on the *Barnes* claim and Athene receives all applicable insurance proceeds and contributions from co-defendants.  Because Athene may ultimately be successful on the *Barnes* claim, insurance and/or contributions may cover any Liability, or Generali may agree to pay the indemnification claims, court intervention now would be premature, it argues.

Generali further argues that there is no live dispute over punitive damages, therefore a declaration on this count would also be premature.[22]

Finally, Generali contends that it is not obligated to pay the alleged outstanding fees and expenses because Athene has not made a payment demand.  As such, Generali never declined payment and could not have breached the contract.

---

[21] Opening Brief at 15 (D.I. 3) ("OB").
[22] *Id.* at 15-16.

Further, once submitted, it may agree to pay some or all of the remaining fees and expenses, and therefore, the disputes are not in "concrete and final form."[23]

Athene counters that the disputes are ripe because Generali has refused to acknowledge its indemnity obligations. Without the declarations, Athene's ability to protect its interests is impeded, effectively depriving Athene of the contractual benefits afforded in the Purchase Agreement.[24] On the breach of contract claim, Athene argues that it has no contractual obligation to submit statements for payment and because Generali refuses to acknowledge its obligations, it fails to state a claim.

## IV.    STANDARD OF REVIEW

On a motion to dismiss pursuant to Superior Court Civil Rule 12(b)(6), the governing pleading standard is reasonable conceivability.[25] Accordingly, the court must "'deny the motion unless the plaintiff could not recover under any reasonably conceivable set of circumstances.'"[26] At the pleading stage, Delaware courts afford a liberal construction.[27] Thus, the court accepts all well-pleaded factual allegations as true and draws all reasonable inferences in favor of the non-moving party.[28] "An

---

[23] *Id.* at 17.
[24] Answering Brief at 18 (D.I. 11) ("AB").
[25] *Delaware Human and Civil Rights Comm'n v. Welch*, 2025 WL 2222967, at *4 (Del. Super. Aug. 5, 2025).
[26] *Id.* (quoting *Cent. Mortg. Co. v. Morgan Stanley Mortg. Capital Holdings LLC*, 27 A.2d 531, 537 (Del. 2011)).
[27] *Surf's Up Legacy Partners, LLC v. Virgin Fest, LLC*, 2021 WL 117036, at *6 (Del. Super. Jan 13, 2021).
[28] *Id.* at *5.

9

allegation, though vague or lacking in detail, is nevertheless 'well-pleaded' if it puts the opposing party on notice of the claim being brought against it.[29] The court, however, does not accept conclusory allegations that lack supporting factual allegations.[30]

Ripeness is a jurisdiction question.[31] "'Whenever it appears by suggestion of the parties or otherwise' that the Court lacks subject matter jurisdiction, the Court must dismiss the claim."[32] The court need not accept a plaintiff's "factual allegations as true and is free to consider facts not alleged in the complaint."[33] The movant only needs to show that the court lacks jurisdiction, whereas the non-movant "bears the 'far more demanding' burden 'to prove jurisdiction exists.'"[34]

## V.    ANALYSIS

### A.    *Ripeness Standard*

A declaratory judgment "is a statutory action … meant to provide relief in situations where a claim is ripe but would not support an action under common-law

---

[29] *VLIW Tech., LLC v. Hewlett-Packard Co.*, 840 A.2d 606, 611 (Del. 2003).

[30] *Surf's Up Legacy Partners*, 2021 WL 117036, at *6.

[31] *Lima USA, Inc. v. Mahfouz*, 2021 WL 5774394, at *8 (Del. Super. Aug. 31, 2021).

[32] *KT4 P'rs LLC v. Palantir Techs. Inc.*, 2021 WL 2823567, at *24 (Del. Super. June 24, 2021) (quoting Del. Super. Civ. R. 12(h)(3)).

[33] *In re Proton Pump Inhibitors Products Liab. Litig.*, 2023 WL 5165406, at *5 (Del. Super. Aug. 11, 2023).

[34] *Id.* (quoting *Appriva S'holder Litig. Co., LLC v. EV3, Inc.*, 937 A.2d 1275, 1284 n.14 (Del. 2007)).

10

pleading rules."[35] A dispute is "ripe" when it "has 'matured to a point where judicial action is appropriate.'"[36] The ripeness prerequisite is necessary to "conserve limited judicial resources and to avoid rendering a legally binding decision that could result in premature and possibly unsound lawmaking."[37]

"[A] practical evaluation of the legitimate interest of the plaintiff in a prompt resolution of the question presented and the hardship that further delay may threaten is a major concern."[38] "A ripeness determination requires a 'common sense assessment' of whether the interests of the party seeking relief outweigh the concerns of the Court in postponing review until the question arises in some more concrete and final form."[39] "Generally speaking, a dispute is ripe if litigation sooner or later appears to be unavoidable and where the material facts are static."[40]

**B.      *Athene's Indemnity Declaratory Judgment Claims (Counts I-III)***

Athene is defending an asbestos claim arising out of the Tower Headquarters, and given the history of claims, anticipates that additional claims will be filed. When

---

[35] *Blue Cube Spinco LLC v. Dow Chemical Co.*, 2021 WL 4453460, at *15 (Del. Super. Sept. 29, 2021); 10 *Del C.* § 6501.
[36] *XL Specialty Ins. Co. v. WMI Liquidating Tr.*, 93 A.3d 1208, 1217 (Del. 2014) (quoting *Stroud v. Miliken Enters., Inc.,* 552 A.2d 476, 480 (Del. 1989)).
[37] *Id.* (quoting *Stroud*, 552 A.2d at 480).
[38] *Id.* at 1217 n.43 (quoting *Schick Inc. v. Amalgamated Clothing & Textile Workers Union*, 533 A.2d 1235, 1239 (Del. Ch. 1987)).
[39] *Benefytt Techs., Inc. v. Capitol Specialty Ins. Corp.*, 2022 WL 16504, at *8 (Del. Super. Jan. 3, 2022) (citing *XL Specialty Ins. Co.*, 93 A.3d at 1217).
[40] *Viacom Inc. v. U.S. Specialty Ins. Co.*, 2023 WL 2034445, at *2 (Del. Super. Feb. 16, 2023).

Generali declines to defend an action (which it is permitted to do),[41] Athene must defend the claim and incur expenses (*i.e.*, Damages). In these counts, Athene seeks declarations with respect to three indemnity obligations. The Court addresses each in turn.

The first relates to the timing and extent of Generali's obligations. Athene contends that after it tenders a claim to Generali and it declines to accept the defense, Generali's indemnification obligations have been triggered and Athene needs to take no further action. Generali responds that its obligations are triggered only after a claim has reached a final judgment, Athene made a claim for coverage under any applicable insurance policy and sought contribution from any co-defendant, and finally, submitted the claim to Generali for consideration.

Generali is correct that the court will decline to enter a declaratory judgment on an indemnification claim until there is a judgment against the party seeking indemnification.[42] But the indemnification obligations must be considered in the

---

[41] If Generali assumes the defense of the Third Party Claim, and it conducts the defense in good faith, it "shall not … be liable" to Athene for any fees of … counsel or any other expenses with respect to the defense of such Third Party Claim … other than reasonable costs of investigation." Purchase Agreement, § 10.6(b)(i).

[42] *XL Specialty Ins. Co.*, 93 A.3d at 1218. *See Hill v. LW Buyer, LLC*, , 2019 WL 3492165, at *9 (Del. Ch. July 31, 2019) (court dismissed declaratory judgment claim where plaintiff was entitled to indemnification for taxes "imposed, assessed, or collected" but based its claim on the accountant's estimate of plaintiff's tax liabilities "exposure," finding the claim was not ripe because "exposure" was too indefinite as plaintiff may never suffer the harm); *Huff v. Longview Energy Co.*, 2013 WL 4084077, at *1-2 (Del. Ch. Aug. 12, 2013) (after defeating plaintiff's claims at the trial level, the directors sought indemnification because they were "successful" under 8 *Del. C.* § 145(c), but because the outcome could be reversed on appeal, the claim for indemnification was not ripe); *Hampshire Grp., Ltd. v. Kuttner*, 2010 WL 2739995, at *53 (Del. Ch. July 12, 2010)

context of the parties' agreement.  Here, the Purchase Agreement obligates Generali to indemnify Athene for Damages relating to any Liability arising out of ownership of the Tower Headquarters, including asbestos claims.[43]  The agreement defines Damages to include "costs of investigation and defense and reasonable attorneys' … fees and expenses."[44]  Generali declined to assume the defense of the *Barnes* claim and therefore, it is bound by Athene's decisions in handling the claim and "shall be responsible for the reasonable fees and expenses of counsel employed by [Athene], which ***shall be promptly reimbursed*** for any such fees and expenses, ***as and when incurred***."[45]

Under Generali's interpretation of the Purchase Agreement, before its obligation to reimburse fees is triggered under this provision, Athene must wait for final resolution of the claim, seek payment under any applicable insurance policy (or third party) and explain why the carrier did not pay the fees and expenses in full. Under Athene's interpretation of the Purchase Agreement, it has no obligation to seek payment of the fees and expenses from an insurance carrier and does not need

---

(former officers' claims for Section 145(c) indemnification not ripe because the company still had the ability to appeal the trial court's ruling on liability).

[43] Purchase Agreement § 10.2(d)(v).  Generali does not dispute that the claims arise out of ownership of the Tower Headquarters.

[44] *Id.* § 10.2.

[45] *Id.* § 10.6(b)(v) (emphasis added).  *Yellow Pages Grp., LLC v. Ziplocal, LP*, 2015 WL 358279, at *3-4 (Del. Super. Jan. 27, 2015) (plaintiff's claim for breach of contract rising from defendant-indemnitor's failure to hold plaintiff harmless by failing to reimburse its legal fees stated a claim and would not be dismissed, but plaintiff's claim for indemnification for the judgment entered against plaintiff in a third-party action was not ripe because plaintiff had appealed the judgment).

to wait for a final judgment before triggering Generali's indemnification obligation to reimburse the fees.

Athene alleges that it incurred $850,000 in fees and expenses that remain outstanding. These fees will remain outstanding no matter the outcome of the *Barnes* claim. There is an open dispute over whether Section 10.4 conditions Generali's indemnification obligations on Athene making a claim against its insurance carriers (or any third party) and whether Athene must wait until final resolution of the underlying claim before Generali is obligated to reimburse fees and expenses. Athene has a legitimate interest in a prompt determination of the parties' indemnification rights and obligations under the Purchase Agreement with respect to any alleged preconditions to triggering Generali's obligations. Accordingly, the Court finds that this dispute is ripe.

The second indemnification obligation at issue arises in the context of settlement authority. Athene claims that when it presented Generali with a settlement proposal for consideration, it declined to consent to the settlement because Quest did not consent. Athene further contends that Generali refuses to acknowledge its indemnification obligations and continues to reserve its right to contest any obligation to pay these costs. Generali responds that this dispute is unripe because there are too many uncertainties as no final judgment has been

entered and if a judgment is entered, Generali and Quest may agree to pay it, thereby obviating the need for judicial intervention at this time.

When Athene is defending a Tower Headquarters claim, Generali has settlement consent rights. Athene seeks a declaration that "Generali's promise to indemnify Athene . . . is independent of whether Generali's own indemnitor(s) also is or may be liable to reimburse Generali" and "does not entitle Generali to withhold its consent to a reasonable settlement of any Tower Headquarters Asbestos Claim."[46] The complaint alleges that Generali has refused to engage in settlement discussions.

During oral argument, Generali acknowledged that Quest is "a practical business consideration, but the agreement between [Generali] and Athene is not conditioned on any indemnity agreement [Generali] may have with a third party."[47]

This claim for a declaration is based on the allegation that Generali refused to participate monetarily in an effort to settle the *Barnes* claim.[48] But, Generali has the right to not consent to a settlement and Athene points to no obligation in the Purchase Agreement requiring Generali to otherwise participate monetarily in a settlement. If Generali improperly withholds its consent, Athene may have a breach of contract

---

[46] Compl. ¶ 53.
[47] February 20, 2026, oral argument CourtScribes recording.
[48] Compl. ¶ 33.

claim. But under the factual scenario here, the dispute is unripe. Further, to the extent that this dispute was ripe, with Generali's acknowledgment, it is now moot.[49]

The third indemnification obligation at issue relates to punitive damages. Athene has faced claims, including the *Barnes* claim, that assert punitive damages. Athene argues that the Purchase Agreement mandates that Generali indemnify "any and all losses," "or damages of any kind or nature whatsoever"[50] and accordingly, punitive damages fall within Damages which Generali must indemnify. Athene alleges that during pendency of these covered claims, Generali has refused to acknowledge its "responsibility for any punitive damages award against Athene."[51]

Generali retorts that punitive damages have not been awarded against Athene, and therefore, this dispute is not ripe.

Athene has a valid reason for wanting to understand the scope of Generali's indemnification responsibility with respect to punitive damages, as the extent of coverage will guide Athene in its settlement negotiations. Again at oral argument, Generali acknowledged that there is "no express prohibition in the contract as to punitive damages" and there is no dispute that the Purchase Agreement requires

---

[49] *See Mentor Graphics Corp. v. Shapiro*, 818 A.2d 959, 963 (Del. 2003) ("Mootness arises when controversy between the parties no longer exists such that a court can no longer grant relief in the matter.").
[50] Purchase Agreement § 10.02.
[51] Compl. ¶ 34.

Generali to pay for punitive damage awards.[52]  Thus, to the extent that this dispute was ripe, with Generali's acknowledgment, it is no longer as it is moot.

## C.  *Athene's Attorneys' Fees Claims (Counts IV-V)*

Athene asserts that it has incurred substantial attorneys' fees and costs in defending Tower Headquarters claims, and will continue to do so until the *Barnes* claim is fully resolved.  Despite the terms of the Purchase Agreement, Generali has not acknowledged its obligation to pay these fees and expenses, and therefore, Count IV seeks a declaration that "Generali is obligated … to pay all reasonable fees and expenses of counsel employed by Athene."[53]  Generali responds that this dispute is not ripe because the amount of attorneys' fees and expenses will not be known until the *Barnes* claim reaches a final resolution and Athene has not sought coverage from insurers or explained why the insurers did not pay these fees and expenses.

For the reasons discussed above, a ripe dispute exists over Athene's obligation, if any, to first seek coverage from insurers and whether Athene is required to wait until final resolution of the underlying claim.[54]

---

[52] February 20, 2026, oral argument CourtScribes recording.  "I do not believe there is a dispute there."  Generali explained that while Quest disputes its obligation to Generali to cover punitive damages, "to [Generali's] knowledge [it has] not raised that as part of [its] contract with Athene."

[53] Compl. ¶ 71.

[54] At argument, Generali acknowledged that the Purchase Agreement "requires [Generali] to pay [fees] promptly as they become due" but argues in its briefs that the obligation does not arise until these alleged preconditions are satisfied.

Finally, Athene asserts a breach of contract based on Generali's failure to pay the outstanding legal fees incurred in the *Barnes* action.[55] Generali argues that Athene fails to state a claim because the legal fees were not presented to Generali for payment.[56] Generali contends that it is entitled to review the invoices for reasonableness and therefore, the contract could not have been breached. Athene counters that the Purchase Agreement does not require it to present any documents to trigger Generali's reimbursement obligation.[57]

A claimant asserting a breach of contract must allege: (1) the existence of a contract; (2) the breach of a contractual obligation; and (3) resulting damages.[58]

Athene sufficiently alleges a valid contract exists and Generali's legal obligation under the contract. Athene has not, however, sufficiently alleged a breach. The Purchase Agreement requires Generali to reimburse "reasonable fees and expenses of counsel employed" by Athene incurred in defense of the claim.[59] Without presenting the outstanding invoices to Generali, it did not have an opportunity to confirm that the fees and expenses fall within Section 10.6 and to

---

[55] Compl. ¶¶ 9, 24, 35.
[56] OB at 22-25.
[57] AB at 13-14.
[58] *VLIW Tech., LLC*, 840 A.2d at 611, 612; *Anschutz Corp. v. Brown Robin Cap., LLC*, 2020 WL 3096744, at *9 (Del. Ch. June 11, 2020).
[59] Purchase Agreement § 10.6(b)(v).

conduct a reasonableness review.[60]  Thus, Generali did not have an opportunity to perform and therefore it could not have breached the contract.[61]

Accordingly, Athene's breach of contract claim fails to state a claim and is *DISMISSED*.

## VI.  CONCLUSION

There is no open dispute over Generali's indemnification obligations relating to punitive damages or its settlement consent rights being independent of Quest's approval.  Therefore, these claims (Counts II and III) are either not ripe or moot and the Motion is **GRANTED**.  Athene's declaratory judgment claims on Counts I and IV present a live dispute and therefore, are ripe.  The Motion is **DENIED** on these counts.  Athene fails to state a breach of contract claim and therefore, the Motion is **GRANTED** on Count V.


**IT IS SO ORDERED.**

/s/Kathleen M. Miller
Kathleen M. Miller, Judge

---

[60] *Id.*; *O'Brien v. IAC/Interactive Corp.*, 2010 WL 3385798, at *5 (Del. Ch. Aug. 27, 2010), *aff'd sub nom. IAC/InterActiveCorp v. O'Brien*, 26 A.3d 174 (Del. 2011) (the party seeking indemnification must show the amount sought is reasonable).

[61] Athene's argument that the Purchase Agreement does not require it to submit invoices before Generali's has an obligation to reimburse, it not viable.  Section 10.2 and 10.6 limit Generali's contractual duty to paying "reasonable" fees and costs.  Requiring Generali to pay based solely on a claimed dollar amount is inconsistent with the terms of the contract.